UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARREN McEATHRON,

    Petitioner,

 -vs-

DANIEL MARTUSCELLO, Superintendent,

    Respondent.

**DECISION AND ORDER**
**No. 1:14-cv-00218(MAT)**

---

## INTRODUCTION

  Proceeding pro se, Darren McEathron ("Petitioner") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is detained in Respondent's custody in violation of his federal constitutional rights. For the reasons discussed herein, Petitioner's request for a writ of habeas corpus is denied, and the petition is dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

  Petitioner challenges the judgment entered against him on October 20, 2008, in the New York State, Steuben County Court (Furfure, J.), following a jury verdict convicting him of Kidnapping in the Second Degree (New York Penal Law ("P.L.") § 135.20) and Assault in the Second Degree (P.L. § 120.05(6)). Briefly, the proof at trial established the during the late afternoon of August 18, 2007, the 16-year-old victim, "A.R.,"[1] was

---

[1] Respondent has referenced the minor victim only by her initials, in accordance with FED. R. CIV. P. 5.2.

riding her bicycle on Telegraph Road near her home when a green Jeep SUV with a yellow ladder on the roof passed by her twice. When she turned down Birdseye Hollow Road, the Jeep passed her again. A.R. described the area as being was mostly wooded, with no houses. There was a pond with a picnic area, and a clearing where a camper was usually parked. As A.R. biked behind the camper, she saw Petitioner, whom she had never seen, standing behind it. Petitioner ran after A.R. and struck her on the right side of her face, causing her to fall off her bicycle and hit her forehead on the ground.

As A.R. tried to stand up, Petitioner continued to hit her, grabbing her arm and pulling her toward the Jeep. A.R. reached down, picked up a rock, and threw it at him, while screaming for help. Petitioner let go of her, and A.R. ran around the camper to get to the road. However, A.R. stumbled and fell into a ditch, which allowed Petitioner to catch up to her. He grabbed her hair and began pulling her to the other side of the road, toward the woods.

A.R. asked Petitioner if he would release her if she did what he wanted. Petitioner replied her that "Sandra" had to see her, and when "Sandra" was done he would let her go. A.R. asked him how "Sandra" knew her and what did "Sandra" want with her. Petitioner just said that "Sandra" wanted to see her and that "Sandra" was waiting for her. Petitioner forced A.R. to lie face down on the

ground, and indicated that "Sandra" was in the woods. Petitioner called out for "Sandra" and told A.R. that she was coming. A.R., however, did not hear anyone. Petitioner put one foot on A.R.'s back and told her that he had a knife, that he was holding it to the back of her neck, and that he would kill her if she did not cooperate. A.R. did not see a knife, but she felt something pressed against her, and assumed it was the knife he referenced. Petitioner told A.R. to stay on the ground while he went to get "Sandra," warning her that he had a gun in the Jeep. If A.R. was not there when he returned, Petitioner threatened, he would find her and kill her. Petitioner then walked out of the woods.

After about 30 seconds, A.R. heard the sound of a car driving by. She got up and ran deeper into the woods, losing a shoe in the process. She ran to a road where she encountered a husband and wife walking together. A.R. told them about the attack, and the husband called 911.

During the police investigation into the incident, Petitioner's fingerprint was matched to a latent fingerprint found on a knife recovered at the crime scene.[2]

Petitioner presented an alibi defense through his parents, James and Carol McEathron. Carol and James McEathron, testified on behalf of the defense. On August 11, 2007, Petitioner, along with

---

[2] Additional facts regarding Petitioner's crimes will be discussed in further detail below as necessary to the resolution of the petition.

his wife, Barbara, and their son, moved into the James' and Carol's home, at 12 Robie Street in the Village of Bath. Carol recalled that on August 18, 2007, she watched television with her grandson in the morning. Just before noon, Petitioner went out with his wife and son. Carol also went out; she drove James to his office and went grocery shopping. When Carol returned home before 2:00 p.m., she saw that Petitioner and his family were home eating lunch. At about 2:30 p.m., Carol saw Petitioner go outside; he came back into the house at about 3:30 or 3:40 p.m. Petitioner and his wife planned to go out to dinner and a movie, while Carol watched her grandson. Petitioner showered to get ready for the evening. As he showered, there was a commotion. Petitioner told Carol that he started to fall and put his hand down to catch himself and hurt his hand. Carol left the house at about 4:20 or 4:30 p.m. to pick up James at his office. They returned home about 4:30 or 4:40 p.m. Petitioner was home with his wife and son when Carol and James arrived. Petitioner and his wife left for dinner at about 6:00 p.m. Petitioner did not testify.

The jury returned a verdict finding Petitioner guilty of both counts charged in the indictment. He was sentenced to an aggregate determinate term of 18 years' imprisonment and 5 years of post-release supervision. Petitioner's direct appeal was unsuccessful. People v. McEathron, 86 A.D.3d 915 (4th Dep't 2011), lv. denied, 19 N.Y.3d 975 (2012). Likewise, Petitioner's collateral

motion to vacate the judgment and application for a writ of error coram nobis were denied.

In his timely petition, Petitioner raises the following grounds for habeas relief: (1) trial counsel was ineffective because he (a) failed to impeach victim with her written statement in order to establish the merger doctrine; (b) failed to request a jury instruction on the merger doctrine; (c) failed to file a motion to suppress Petitioner's statements to the police and to suppress identification evidence; (d) failed to challenge the grand jury proceeding; (e) stipulated to certain evidence; and (f) failed to cross-examine Investigator Albright; and (2) appellate counsel was ineffective because he failed to argue that trial counsel was ineffective for (a) failing to impeach the victim's testimony and (b) failing to seek a jury instruction on the merger doctrine. Respondent answered the petition and argued that Petitioner's ineffective assistance of trial counsel claims are unexhausted but must be deemed exhausted and procedurally defaulted. In addition, Respondent contends that the ineffective assistance of trial counsel claim based on the failure to impeach the victim is also procedurally barred pursuant to the adequate and independent state ground doctrine. Finally, Respondent argues, none of Petitioner's habeas claims have merit. Petitioner filed a traverse, challenging some of Respondent's procedural default arguments and disputing some of Respondent's characterizations of the proof at trial.

For the reasons discussed below, the Court finds that none of Petitioner's claims warrant habeas relief. Accordingly, the petition must be dismissed.

## DISCUSSION

### I. Ineffective Assistance of Trial Counsel

#### A. Legal Standard

In order to establish that he received the ineffective assistance of trial counsel, a defendant must show both that his attorney provided deficient representation and that he suffered prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). The deficient performance prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness," such that counsel's conduct "so undermined the proper functioning of the adversarial process" that the trial "cannot be relied on as having produced a just result." Id. at 686, 688. To fulfill the prejudice prong, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." id. at 694. Strickland characterized a "reasonable probability" as being "a probability sufficient to undermine confidence in the outcome" of the defendant's trial Id.

### B. Trial Counsel's Alleged Errors

#### 1. Failure to Attempt to Impeach Victim with Her Written Statement

Petitioner contends that trial counsel was ineffective in failing to use the victim's written statement to the police to impeach her on cross-examination. According to Petitioner, this statement demonstrated that the attack on the victim was primarily an assault, consisting of punching her and dragging her by her hair, and the restraint on her liberty was merely incidental to or for the purpose of committing the assault. Therefore, Petitioner reasons, the merger doctrine would have applied and the kidnapping charge would have required dismissal. Therefore, Petitioner argues, the merger doctrine was applicable to the case, and should have resulted in the dismissal of the second-degree kidnapping charge.

One may not be guilty of kidnapping arising from restraint necessarily incidental to the commission of another crime. People v. Cassidy, 40 N.Y.2d 763 (1976). The judicially created merger doctrine was "intended to ameliorate the harsh sanctions imposed on those essentially guilty only of some less serious crime but whose underlying actions nevertheless fall literally within the provisions of the kidnapping statute." People v. Morales, 148 A.D.2d 325, 326 (1st Dep't 1989) (citing People v. Pellot, 105 A.D.2d 223, 225-26 (2d Dep't 1984)).

Here, the merger doctrine was inapplicable, as the Appellate Division determined on direct appeal in connection with its

rejection of Petitioner's claim that the trial court erred in denying his motion for a trial order of dismissal with respect to the kidnapping charge on the ground that it violated the merger doctrine. In the present case, as the Appellate Division found, "'"[t]he [abduction] was not a minimal intrusion necessary and integral to another crime, nor was it simultaneous and inseparable from another crime. It was a crime in itself[.]"'" People v. McEathron, 86 A.D.3d at 916 (quotations omitted; brackets in original). The only reasonable view of the trial evidence, as the Appellate Division explained, was that the kidnapping was not a part of the assault. Rather, the evidence demonstrates that [Petitioner] restrained and began to transport the victim for undisclosed purposes and that the assault was incidental to the kidnapping." Id.

Here, A.R.'s statement was substantially consistent with her trial testimony, and thus would have added nothing to trial counsel's motion to dismiss based on the merger doctrine. If anything, the consistency of the victim's pre-trial statement with her trial testimony would have only strengthened the veracity of her narrative in the jurors' minds. In other words, trial counsel's decision not to rely on the victim's statement as a grounds for impeachment avoided potential prejudice to Petitioner and thus was a reasonable strategic decision.

### 2. Failure to Request a Jury Instruction on the Merger Doctrine

Petitioner asserts trial counsel erred in failing to request an instruction to the jury on the merger doctrine. "[T]he merger doctrine was created to avoid prosecutions for kidnapping where the conduct underlying the charge constituted an inseparable part of another crime [.]" People v. Smith, 47 N.Y.2d 83, 87, 390 N.E.2d 291, 293 (1979) (citation omitted). Whether the merger doctrine should apply to a particular case is a legal question for the court, not a factual question for the jury. See, e.g., Smith, 47 N.Y.2d at 87–88 ("Under the facts of the present case, it is clear that no merger could be deemed to have occurred. The robbery was fully consummated before the victim was forced at gunpoint to embark on the hour-long drive. . . . Since the criminal conduct at the root of the two crimes was different, the merger doctrine, even if available, could have no application."). This is underscored by the numerous decisions from the New York Court of Appeals[3]

---

[3]

See, e.g., People v. Cain, 76 N.Y.2d 119, 127, 556 N.E.2d 141, 145 (1990) ("The described scenario proved beyond a reasonable doubt that the robbery and kidnapping were factually separable and clearly constituted a 'change[ ] in purpose and direction' from the original robbery sufficient to remove the kidnapping from the Levy-Lombardi doctrine of merger[.]"); People v. Riley, 70 N.Y.2d 523, 532, 517 N.E.2d 520, 525 (1987) ("While the restraint and asportation which occurred while defendant and his cohorts were trying to force Malik to turn over money may have merged with the robbery (People v. Lombardi, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 [(1967)]; People v. Levy, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 [(1965)]), the defendant's additional activity of placing Malik in the trunk and driving around for approximately three hours continued well beyond the robbery and constituted the independent crime of kidnapping (People v. Cassidy, 40 N.Y.2d 763, 390 N.Y.S.2d 45, 358 N.E.2d 870 ([1976]); People v. Miles, 23 N.Y.2d 527, 297 N.Y.S.2d 913, 245 N.E.2d 688 [(1969)]).")

considering whether the factual scenarios underlying defendants' convictions for kidnapping fell within or without the merger doctrine. The New York Court of Appeals "is a certiorari court[.]" Lampon v. Lavalley, No. 10 CIV 2591 BMC, 2011 WL 684623, at *9 (E.D.N.Y. Feb. 16, 2011), aff'd, 504 F. App'x 1 (2d Cir. 2012). Subject to very limited exceptions not applicable here, it has the authority to consider *only* "'questions of law[.]'" People v. Gray, 86 N.Y.2d 10, 20 (1995) (quoting People v. Belge, 41 N.Y.2d 60, 62 (1976) ("Our court's jurisdiction, however, with exceptions not material here, is limited to review of questions of law[.]") (per curiam) (citing N.Y. CONST., art. VI, § 3, subd. a)). It is axiomatic that "[t]he role of the jury in a federal [or state] criminal case is to decide only the issues of fact, taking the law as given by the court." Berra v. United States, 351 U.S. 131, 134 (1956) (citing Sparf v. United States, 156 U.S. 51, 102 (1895)). Thus, if trial counsel had requested a charge on the merger doctrine in Petitioner's case, it would have been denied. "Failure to make a meritless argument does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999).

### 3. Failure to File a Motion to Suppress

Petitioner faults trial counsel for filing to file a motion to suppress his statements to the police and to suppress identification evidence. The Appellate Division rejected this

-10-

claim, finding that Petitioner "failed to show that [such] a . . . motion, if made, would have been successful[,]" id., and additionally "failed to 'demonstrate the absence of strategic or other legitimate explanations' for defense counsel's failure to make the pretrial motions that he now claims should have been made[.]" Id. (quotation and citation omitted). First, there is no basis in the record to conclude that Petitioner's statements to the police were coerced or otherwise obtained unlawfully. The record establishes that Petitioner voluntarily accompanied Investigator Albright to the police station on August 21, 2007, and willingly submitted to an interview related to the attack on A.R. At the conclusion of the interview, Investigator Albright drove Petitioner to his residence. The absence of Miranda warnings prior to this interview is of no moment, because Petitioner was not in custody at the time of the August 21st statement.

With respect to his second interview with the police on August 23, 2007, the record establishes that Investigator Albright returned to Petitioner's residence and asked him to accompany him to the police station. Once at the station, Investigator Albright administered the Miranda warnings, whereupon Petitioner waived his rights and agreed to speak with the investigator. Petitioner cannot show any reasonable probability that the trial court would have deemed his statements inadmissible, and therefore a suppression motion by trial counsel would have been denied. Petitioner

therefore has failed to demonstrate prejudice from trial counsel's failure to file a motion to suppress his statements to police.

With regard to trial counsel's failure to move to suppress A.R.'s identification, this omission likewise did not prejudice Petitioner given the other evidence of Petitioner's culpability, including the fact that he was driving a vehicle matching the description of the vehicle driven by A.R.'s attacker—a green Jeep with a yellow ladder on the roof. Petitioner's father testified that he owned a green Jeep which Petitioner had been using for work. There was a stepladder on the roof, although Petitioner's father claimed he had asked Petitioner to remove it the day prior to the crime. In close proximity to the bicycle that A.R. had been riding, the police recovered a knife which bore Petitioner's fingerprint, providing an additional linkage between Petitioner and the attack. Even if A.R.'s identification of Petitioner had been suppressed, which was unlikely given the circumstances under which she had the opportunity to observe Petitioner, the other evidence linking Petitioner to the crime was so compelling that there is no reasonable probability that trial counsel's omission had an effect on the outcome of Petitioner's trial.

### 4.  Failure to Challenge the Grand Jury Presentment

Petitioner complains that trial counsel did not challenge the sufficiency of the grand jury minutes. "There is no federally-cognizable ineffective assistance claim concerning advice

regarding the state grand jury process." Montalvo v. Annetts, No. 02 CIV.1056 LAK AJP, 2003 WL 22962504, at *24 (S.D.N.Y. Dec. 17, 2003) (citing Davis v. Mantello, No. 01-2264, 42 F. App'x 488, 491 n. 1, 2002 WL 1032687 at *2 n. 1 (2d Cir. May 22, 2002) (emphasis added; citing cases), cert. denied, 538 U.S. 986 (2003)). "Under federal law, any defects connected with a grand jury's charging decision are cured by the petit jury's conviction, because the trial conviction establishes not only probable cause to indict, but proof of guilt beyond a reasonable doubt." Thompson v. Kelly, No. 97-CV-258H, 1999 WL 166820, at *2 (W.D.N.Y. Feb.4, 1999) (citing United States v. Mechanik, 475 U.S. 66, 70 (1986)). "Given that any defect in the grand jury proceeding was cured by [P]etitioner's subsequent conviction, as previously discussed, '[i]t necessarily follows as a matter of law that petitioner cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation.'" Bingham v. Duncan, No. 01CIV.1371(LTS)(GAY), 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) (quoting Thompson, 1999 WL 166820, at *2 (quotation and citation omitted in original). Moreover, Petitioner has offered nothing but speculation that the minutes contained some deficiency that would have warranted relief, which provides another basis for finding that trial counsel's omission did not prejudice Petitioner's defense.

### 5. Erroneous Stipulation to Evidence

During discovery, defense counsel was provided with a "latent print report," authored by New York State Police Investigator Lee Stonebraker, a latent print examiner. According to Investigator Stonebraker's analysis, a fingerprint lifted from the knife found at the crime scene matched one of Petitioner's fingerprints on his booking fingerprint card. On the day that Investigator Stonebraker was scheduled to testify, Petitioner and trial counsel stipulated that it was Petitioner's print on the knife and that the knife would be admitted into evidence without the need for further proof of chain-of-custody. (T.145-46).

Petitioner now faults defense counsel for this decision. This claim is fatally undermined by the record which establishes that defense counsel acted in consultation with Petitioner, and Petitioner personally addressed the trial court and gave his assent to the stipulation. Petitioner cannot establish that counsel was ineffective when he himself acquiesced in counsel's strategic decisions. See Curkendall v. Mazzuca, 05-CV-688, 2008 U.S. Dist. LEXIS 124109, at *82 (W.D.N.Y. July 23, 2008). It bears emphasis that this is a habeas corpus case in which "the petitioner bears the burden of proving his constitutional rights were violated." Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997) (citations omitted). "The record here contains no support for the claim that [P]etitioner did not acquiesce in the strategic

judgment of trial counsel[,]" Nunez v. Miller, No. 00 CIV 0966(ERK), 2001 WL 1773731, at *8 (E.D.N.Y. July 12, 2001), regarding the evidentiary stipulation. Where, as here, the record indicates that Petitioner knowingly agreed to the reasonable strategy pursued by trial counsel, he cannot be heard later to question that strategy. See United States ex rel. Reid v. Richmond, 295 F.2d 83, 89 (2d Cir. 1961) ("Whatever may have been the reasons for the course taken by Reid and his counsel, it was a conscious reasoned choice made by counsel who was experienced in the ways of the criminal law. As such, it amounted to a forfeiture of any right to assert constitutional infirmities in the trial as a result of the admission of the statements. . . . Reid must be bound by what his lawyers did and his acquiescence in that course by his own testimony.") (citations omitted).

### 6. Failure to Cross-Examine Police Witness

According to Petitioner, trial counsel was ineffective in failing to cross-examine Investigator Albright during the prosecution's rebuttal case. As part of Petitioner's alibi, his father, Mr. McEathron, testified that on Friday, August 17, 2007, the day before the incident, he recorded the mileage of the green Jeep Cherokee that Petitioner had been driving to work. (T.174-75). When Mr. McEathron checked the Jeep's mileage again ten days later, on August 27, 2007, he found it was the same as it had been on August 17, 2007. (T.176-77).

On rebuttal, the prosecution recalled Investigator Albright, who testified that during his interview with Petitioner on August 21, 2007, he indicated that he had driven the Jeep to the Salvation Army earlier that same day. (T.188-89). Defense counsel did not cross-examine Investigator Albright. (T.189). Petitioner states that attached to the People's Notice pursuant to Criminal Procedure Law ("C.P.L.") § 710.30 was the write-up of both of Investigator Albright's interviews with Petitioner. Petitioner asserts that the write-up reveals that on August 21, 2007, Petitioner admitted that he used his father's green Jeep Cherokee to drive back and forth to work but does not indicate that Petitioner had admitted to driving the Jeep that same day to the Salvation Army.[4] Petitioner contends that defense counsel's failure to question Investigator Albright on this point allowed testimony to stand which, Petitioner claims, "completely undermined the credibility" of Mr. McEathron.[5]

"Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in

---

[4] Petitioner has not established that the alleged discrepancy amounted to error under state law. See People v. Coleman, 682 N.Y.S.2d 402, 403 (2d Dep't 1998) ("To the extent that the CPL 710.30 notice did not include the entire statement, the remaining part of the statement was made to the same police officer during the same conversation, in the same location as the statement identified in the CPL 710.30 notice. Therefore, the defendant was given sufficient notice of the statement so as to enable him to timely move to suppress it[.]") (citations omitted).

[5] As an aside, the Court notes that Mr. McEathron's testimony regarding the odometer reading being the same on August 17th and August 27th is difficult to square with Petitioner's claim that he used the Jeep Cherokee to drive to and from work on a daily basis.

-16-

nature' and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)). Even if trial counsel's decision not to attempt to impeach Investigator Albright with the alleged inconsistencies in the attachments to the C.P.L. § 710.30 notice, Petitioner has not established that he suffered any prejudice from this error. Significantly, Petitioner does not identify with any degree of specificity what the cross-examination should have accomplished. He asserts merely that trial counsel "*could he have possibly* done some 'damage control' on this front[.]" (See Pet'r App. Br. 39-40, SR 175-76 (Dkt #4-4, pp. 5-6 of 108) (emphasis supplied). See Montgomery v. Wood, 727 F. Supp. 2d 171, 187 (W.D.N.Y. 2010) (finding no ineffective assistance where, although there "does not seem to have been a potential downside to cross-examining Davis about the relocation assistance she received," but "at the same time, the Court cannot conclude that had counsel elicited that fact it would have undermined Davis' credibility to such an extent there is a reasonable probability the outcome of Montgomery's trial would have been different".

**II. Ineffective Assistance of Appellate Counsel**

The two-pronged Strickland standard applies equally to claims of ineffective assistance of appellate counsel. E.g., Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992) (holding that in order to

prevail on an ineffective assistance of appellate counsel claim, appellant must show first that his counsel's performance was deficient and second that the deficiency caused actual prejudice to his defense), cert. denied, 508 U.S. 912 (1993). Petitioner argues that his appellate counsel was ineffective because he failed to brief claims that his trial counsel was ineffective for failing to impeach A.R. with her pre-trial statement to the police, and for failing to seek a jury instruction on the merger doctrine. For purposes of establishing the deficient performance prong, it is insufficient for Petitioner to show "merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Id. Here, as discussed above, Petitioner has failed to demonstrate constitutionally ineffective assistance of the part of his trial counsel with regard to either of these decisions. Petitioner cannot show that appellate counsel's failure to brief meritless claims asserting trial counsel's ineffectiveness fell below an objective standard of reasonableness. Likewise, he cannot demonstrate that appellate counsel's omissions had any effect on outcome of his appeal, since the omitted claims were without merit. See Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability"' that [his] claim would

have been successful before the [state's highest court]."'") (quotation omitted; brackets in original).

## CONCLUSION

For the foregoing reasons, Darren McEathron's request for a writ of habeas corpus is denied, and the petition is dismissed. The Court declines to grant a certificate of appealability because there has not been "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   May 30, 2017
         Rochester, New York.